UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DONNA AUSTIN,<br><br>        Plaintiff,<br><br>    v.<br><br>THE BOEING COMPANY,<br><br>        Defendant. | CASE NO. C12-623 MJP<br><br>ORDER GRANTING SUMMARY JUDGMENT |

THIS MATTER comes before the Court on Defendant's motion for summary judgment. (Dkt. No. 9.) The Court has considered the motion, Plaintiff's response (Dkt. No. 23), the reply (Dkt. No. 27) and all related documents. Based on this review, the Court GRANTS the motion and issues judgment in favor of the Defendant.

**<u>Background</u>**

Plaintiff Donna Austin ("Austin") brings this action for employment disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. §12101 ("ADA"), and the Washington Law Against Discrimination, RCW 49.60 ("WLAD"). Austin claims her

ORDER GRANTING SUMMARY JUDGMENT- 1

1  employer, Defendant The Boeing Company ("Boeing"), harassed and wrongfully discharged her
2  because of its refusal to accommodate her disabilities. (Dkt. No. 23 at 1.) She also claims Boeing
3  retaliated against her when she sought accommodations. (Id. at 2.)

4      Austin was employed at Boeing from 1984 to 2011. (Dkt. No. 9 at 2.) She began as a
5  clerk, and over the years held various positions as a result of promotions, lateral transfers and
6  reductions in force. (Id.) From 2007 to October 28, 2011, when Boeing terminated her
7  employment, Austin was a staff analyst 4: a high-level, non-union, exempt position with specific
8  job duties that vary from one business unit to the next. (Id.) A level 4 analyst is expected to learn
9  quickly, take initiative, and work with little direction while being adaptable to changing
10 environments. (Dkt. No. 10 at 2.) Level 4 staff analysts generally have at least a four-year
11 college degree and advanced analytical and project management skills. (Id.) Prior to moving to
12 this level, Austin worked in level 2 and 3 positions, which are lower paying and less demanding.
13 (Dkt. No. 9 at 3.)

14     For the past several years, Austin suffered chronic neck and back pain caused by a
15 degenerative back condition, necessitating a cervical fusion in 2007 and a lumbar laminectomy
16 in 2009, both of which were unsuccessful. (Dkt. No. 23 at 2.) In 2010, she had an automobile
17 accident which caused further damage to her back and neck and further limited her activities.
18 (Id.) Along with chronic pain, Austin was diagnosed with sleep apnea, migraine headaches,
19 Sjogrens Disease (causing dryness of the eyes and mouth along with other symptoms),
20 depression and hypothyroidism. (Id.) From 2007 to the time she was terminated, Austin was
21 symptomatic. She had difficulty using a keyboard, concentrating on job assignments, and
22 relating well with her manager and fellow employees. (Id. at 3.)

23

24

In 2007 Austin requested and was provided with an ergonomic chair to help alleviate the pain she experienced at her desk. (Id.)  Austin received a new manager in 2007, Svetlana Laurel, with whom she developed personal and professional conflicts. On September 9, 2009, Austin was put on a performance improvement plan ("PIP"). (Dkt. No. 20-3 at 12.)  In October of 2009 Austin went on FMLA leave and filed a grievance against Laurel. (Dkt. No. 23 at 3.) Austin returned to work in December 2009. Austin's manager Debra Floyd had many conversations with Austin about her poor job performance in 2009 and 2010, during which Austin denied she was a poor performer and attributed problems to her supervisor Laurel. (Dkt. No. 12 at 2.) Floyd, believing there was a personality conflict between Austin and Laurel, assigned Austin to assignments under employee Cora Chen. (Id.) Chen testified that Austin complained about the work assigned and "completely and utterly failed" in the job. (Dkt. No. 13 at 2.) Austin did not communicate to Chen that her failure to perform may be attributable to her disabilities. (Id. at 3.) After about one week, Chen told Floyd she no longer wanted Austin to support her. (Id.)

In May 2010, Austin applied for and was granted a lateral transfer to another level 4 staff analyst assignment in a different department with new manager George Lozier. (Dkt. No. 9 at 4.) Lozier filled out a performance management evaluation for Austin apparently covering January 1, 2010 through March 3, 2010, giving Austin a "met expectations" grade on all points with no comments. (Dkt. No. 24-1.) This review covered the time period Austin was working under Laurel, and was filled out by Lozier because of the strained relationship between Laurel and Austin. (Dkt. No. 23 at 3.) Lozier later filled out another performance evaluation dated May 21, 2010 through December 2010. (Dkt. No. 10 at 7.) Lozier claims soon after hiring Austin he became aware she "lacked the fundamental software and organization skills that she needed" to be successful in her position. (Dkt. No. 10 at 2.) The May-December 2010 performance review

grades Austin as "met some expectations" on every point and generally describes her work and attitude as unsatisfactory. (Id. at 10.) In November 2010 Lozier met with human resources generalist Helena Nemr to develop a second PIP for Austin. (Dkt. No. 11.)

Austin had several conversations with Lozier about her medical conditions. In June 2010 she requested a work station accommodation, which Boeing agreed to provide but did not deliver until October 2010. (Dkt. No. 23 at 4.) On January 31, 2011 Nemr met with Austin to tell her Lozier would soon be presenting her with a PIP. (Dkt. No. 11 at 2.) Four days later, Austin went on a five-month medical leave, receiving short term disability benefits from Aetna from February 7 through April 28, 2011. (Dkt. No. 23 at 4.) Austin's absence prevented Nemr from delivering the PIP to Austin. (Dkt. No. 11 at 2.) Aetna rejected Austin's request for continuation of benefits and Austin returned to work in July, 2011. (Dkt. No. 23 at 4.)

Upon return Austin requested and was granted a reduced work schedule of 4 hours per day through August 13, 2011. (Id.) Shortly after her return, Lozier and Nemur held a disciplinary meeting with Austin where they again told her she was going to be placed on a PIP, and that she had a negative attitude that would not be tolerated. (Id.) Austin was told not to speak to others unless spoken to or necessary to do her work and to limit her breaks to one 15-minute break during 4 hours of work. (Id.) During this meeting Austin tried to explain that she was having pain that restricted the way she could work, but claims Nemr was unreceptive. (Id. at 5.)

The PIP described how Austin's job performance and behavior needed to improve, provided for weekly check-ins to track progress, and stated that Austin's failure to improve by October 28, 2011 could result in further corrective action including termination of employment. (Dkt. No. 9 at 7.) While Austin was working under the PIP on her reduced schedule she found it difficult to comply with the limits Lozier put on her break time due to medications she was

1 taking. Austin obtained a physicians note stating she needed more frequent breaks, and Lozier
2 agreed to the accommodation. (Dkt. No. 23 at 5.) Austin was assigned a disability management
3 representative, Shaun Holdaas. (Id. at 6.) Austin had several conversations with Holdaas and
4 informed him of her chronic pain, fatigue, and depression and how those conditions impacted her
5 job performance. (Id.) Holdaas informed Austin that he would ensure her more frequent breaks
6 would be accommodated, but that he would not seek or provide any other accommodations not
7 requested. (Dkt. No. 23 at 6.)
8   Austin's employment was terminated on October 28, 2011 for failure to meet the
9 objectives in the PIP. (Dkt. No. 9 at 7.) Seven months later, Austin applied for Social Security
10 Disability Insurance (SSDI) benefits. (Id.) Austin now brings this action for disparate treatment,
11 harassment and ADA and WLAD violations stemming from the termination and failure to
12 accommodate. Boeing seeks summary judgment that (1) Austin has failed to establish a prima
13 facie claim of disparate treatment or discrimination under the ADA or WLAD, (2) Boeing did
14 not fail to accommodate Austin in violation of the ADA or WLAD, (3) Boeing's termination of
15 Austin was legitimate and non-discriminatory, and (4) there was no retaliation against Austin for
16 exercising any protected rights. The issues in this motion encompass all claims in the case.

17
18                                          **Analysis**
19   A.  <u>Harassment and Termination/Disparate Treatment Claims under the ADA and WLAD</u>
20       Austin's first and fourth claims for relief allege harassment in violation of the ADA and
21 WLAD and termination/disparate treatment in violation of the ADA and WLAD. Boeing moves
22 for summary judgment on these claims. Austin's response brief fails to address these claims.
23 Instead, Austin's response focuses on Boeing's failure to accommodate and retaliation claims
24 under the ADA and WLAD. Austin expressly states that she is not pursuing the disparate

treatment claim in footnote 3 of her response (Dkt. No. 23) and the harassment claim is not mentioned. In accordance with Local Civil Rule 7(b)(2), the failure to respond is treated as admitting the motion for summary judgment on these claims has merit. Summary judgment is GRANTED in favor of Boeing on the termination/disparate treatment and harassment claims under the ADA and WLAD.

B.  Summary Judgment Standard

Summary judgment is warranted if no material issue of fact exists for trial.  Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996).  The underlying facts are viewed in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970).  If the moving party makes this showing, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial.  Id. at 324. This standard guides the decisions on each of the following claims.

a.  Failure or refusal to accommodate in violation of the ADA and WLAD

Plaintiff claims Boeing failed or refused to accommodate her disabilities by not engaging in an interactive good faith process in violation of the ADA and WLAD. To sustain a failure to

accommodate claim under the ADA a plaintiff must show she (1) had a disability as defined by the ADA; (2) was qualified to perform the essential functions of her job; (3) gave her employer notice of her disability and limitations; and (4) upon notice, the employer failed to adopt measures available to it in order to accommodate the disability. Toungate v. Konica Minolta Bus. Solutions, USA, Inc., 2009 U.S. Dist. LEXIS 17937, *5 (W.D. Wash. 2009). If an employee identifies a disability or the employer is aware of a disability that may require accommodations, the employer has a duty under the ADA to engage in a good faith interactive process of identifying barriers to equal opportunity and possible accommodations, to assess the reasonableness and effectiveness of the accommodations, and to implement the accommodation most appropriate for the employee and employer that does not impose an undue hardship on the employer. Barnett v. U.S. Air, Inc., 228 F.3d 1104, 1114 (9th Cir. 2000), vacated in part on other grounds, 535 U.S. 391 (2002).

Similarly, to establish a prima facie case of failure to reasonably accommodate a disability under WLAD, a plaintiff has the burden to show (1) she had a sensory, mental, or physical abnormality that substantially limited her ability to perform the job; (2) she was qualified to perform the job; (3) she gave her employer notice of the abnormality and its substantial limitations; and (4) upon notice, her employer failed to affirmatively adopt measures available to it and medically necessary to accommodate the abnormality. Roeber v. Dowty Aero., 116 Wn. App. 127, 139 (2003). The failure to accommodate claim under WLAD follows the same analysis as the ADA's failure to accommodate claim. Gidge v. Yakima County, 2010 U.S. Dist. LEXIS 118310, *27 (E.D. Wash. 2010).

Austin's failure to accommodate claims under the ADA and WLAD fail because she cannot establish that Boeing failed to adopt measures available to it in order to accommodate her

1    disabilities within the requirements of the law. Boeing does not dispute that Austin has

2    disabilities under the ADA and WLAD. However, the facts make clear Boeing engaged in a

3    good faith interactive process with Austin and provided her with every accommodation she

4    requested. The 9th Circuit has held subjective bad faith in the accommodations process will not

5    be found without linking some rejection of a requested accommodation to bad faith or showing

6    how an accommodation refused was reasonable on its face. Lucke v. Multnomah County, 365

7    Fed. Appx. 793, 794 (9th Cir. 2010).

8        Austin herself testified that Boeing never refused any accommodation she requested.

9    (Dkt. No. 20-2 at 41.) Austin also testified that she cannot identify any accommodation that

10   would have allowed her to fully and effectively perform her job as of 2011. (Id. at 22.) Austin

11   admits she was working with Holdaas, a disability management representative at Boeing, for

12   determination of her accommodation needs. (Dkt. No. 23 at 16.) While Austin presents an email

13   from Holdaas that is not tasteful, the letter indicates there was ongoing communication about

14   accommodations and at least does not contradict the admission that Austin received every

15   accommodation she requested. (Dkt. No. 25-2 at 2.)

16       Austin is correct that the 9th Circuit held an employer has an affirmative duty under the ADA

17   to explore further methods of accommodation, beyond those necessarily suggested by the

18   employee, before terminating that employee in Humphrey v. Mem'l Hosps. Ass'n, 239 F.3d

19   1128 (2001). Humphrey is distinguishable from this case. In Humphrey, an employee with a

20   disability asked for a new accommodation (working from home) when an existing

21   accommodation (flexible start time) was failing, and her request was summarily denied. Id. In

22   Humphrey's briefing, she identified two different accommodations that might have made it

23   possible for her to perform her job: working from home or a leave of absence. Id. She had not

24

suggested the leave of absence to her employer. Id. The problem in Humphrey was the employer did not work with the employee in finding a successful accommodation when it was clear that the existing one was failing and when it knew or should have known other accommodations were available that may have been helpful to the employee. 239 F.3d at 1139. Austin's reply brief recounts several occasions where she requested accommodations and received them, and where she discussed her medical conditions with her employer beginning in 2007 and continuing through her termination.  No accommodation was ever refused. Austin does not now suggest any accommodation that may have been successful during her employment with Boeing. Her bald allegation that Boeing "did not engage in an interactive process" is insufficient. (Dkt. No. 23 at 17.) It goes beyond Humphrey, and beyond reasonableness, to hold an employer to more than granting every accommodation request made. For this reason summary judgment is GRANTED in favor of Defendant on the failure to accommodate claims.

          b.   Retaliation in violation of the ADA and WLAD

Plaintiff claims Boeing retaliated against her by taking adverse action and terminating her employment because she tried to obtain the employment rights guaranteed to her by the ADA and WLAD. To prove retaliation under WLAD and the ADA, a plaintiff must establish that (1) they engaged in a protected activity, (2) defendants took an adverse employment action, and (3) there is a causal link between the protected activity and the adverse action. EEOC v. Cottonwood Fin. Wash., LLC, 2010 US Dist. LEXIS 134515, *32 (E.D. Wash. 2010), Barnett v. U.S. Air, Inc., 228 F.3d 1104, 1114 (9th Cir. 2000), vacated in part on other grounds, 535 U.S. 391 (2002). If an employee can establish a prima facie case of retaliation, the employer has the burden to provide a legitimate, nondiscriminatory reason for its actions. McAlindin v. County of San Diego, 192 F.3d 1226, 1238 (9th Cir. 1999). If this is done, the employee must respond with

1   specific, substantial evidence of pretext. Id. Here, the only disputed element is the "causal link"
2   between the protected activity Austin took by requesting accommodations for her disabilities and
3   the adverse employment action Boeing took by terminating Austin.
4       The material facts are not in dispute. There is a long and documented trail, beginning
5   with the first PIP in 2007, indicating Austin was insufficiently performing her job. Austin does
6   not dispute she learned she was being put on a second PIP in January 2011, before she went on
7   leave. (Dkt. No. 27 at 10.) This PIP stated she had 90 days to meet specific performance
8   objectives or there would be action taken, including the possibility of termination. (Id.)
9   Meanwhile, Boeing gave Austin every accommodation she requested. Austin claims she gave
10  Boeing an accommodation plan by her doctor on the eve of her termination and this may
11  establish a nexus between a protected activity and Boeing's adverse action. (Dkt. No. 23 at 20.)
12  The letter itself indicates otherwise, providing no recommendations for accommodations and
13  only indicating that some recommendations may be made when testing is completed. (Dkt. No.
14  24-6 at 2.) The mere fact that Austin brought up her disability while she was under the PIP does
15  not negate the ongoing process Boeing was engaging in with Austin to improve her work
16  performance. Plaintiff has not shown that her protected activity was a substantial factor
17  motivating her termination. Daniel v. Boeing Co., 2011 U.S. Dist. LEXIS 9609, *27 (W.D.
18  Wash. 2009). Summary judgment is GRANTED in favor of Boeing on the retaliation claims.

### Conclusion

20      The key facts are not in dispute in this case. Boeing granted each of Austin's
21  accommodation requests and properly documented her termination process. Because there are no
22  remaining questions of material fact, summary judgment is appropriate and is GRANTED in
23  favor of Defendant on all claims.
24

The clerk is ordered to provide copies of this order to all counsel.

Dated this 19th day of January, 2013.

*Marsha J. Pechman*
Marsha J. Pechman
Chief United States District Judge